UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

| | |
|---|---|
| STANLEY ARISTILDE EL BEY, | NOT FOR PUBLICATION |
| Plaintiff, | **MEMORANDUM & ORDER** |
| v. | 17-CV-6203 (MKB) |
| DISTRICT OF COLUMBIA, doing business as UNITED STATES CORPORATION, STATE OF NEW YORK, COUNTY OF QUEENS, NEW YORK CITY POLICE DEPARTMENT, JOHN and/or JANE DOES CEOS, JOHN and/or JANE DOES PROFITORS, JOHN and/or JANE DOES ADMNISTRATORS, and JOHN and/or JANE DOES TRUSTEES, in their individual and official capacities, | |
| Defendants. | |

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff Stanley Aristilde El Bey, proceeding *pro se*, filed the above-captioned action on October 10, 2017, against various state, municipal, and individual Defendants. (Compl., Docket Entry No. 1.) The Court grants Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 solely for the purpose of this Memorandum and Order.[1] For the reasons discussed below, the Court dismisses the Complaint.[2]

---

[1] Plaintiff did not sign his motion to proceed *in forma pauperis*. (*See* Mot. for Leave to Proceed *in forma pauperis*, Docket Entry No. 4.) Should Plaintiff file an amended complaint, he must also submit a signed and completed motion to proceed *in forma pauperis*.

[2] On October 3, 2018 and again on October 30, 2018, Plaintiff filed letters requesting an emergency hearing. (Aff. of Fact Demand for Emergency Hearing dated October 2, 2018, Docket Entry No. 19; Aff. of Fact Demand for Emergency Hearing dated October 29, 2018, Docket Entry No. 20.) A temporary restraining order, like a preliminary injunction, is an extraordinary remedy that will not be granted lightly. *See Borey v. National Union Fire Ins. Co.*, 934 F.2d 30, 33 (2d Cir. 1991). To obtain a temporary restraining order, Plaintiff must show "a

**I. Background**

The Court assumes the truth of the factual allegations in the Complaint for the purpose of this Memorandum and Order.[3]

While the Complaint and accompanying submissions are far from a model of clarity, the Court understands Plaintiff to be seeking relief related to the seizure of his vehicle in connection with his arrest on July 23, 2017, and being held by the New York City Police Department ("NYPD") during the pendency of his state court criminal case, *People v. Aristilde*, Docket No. CR-030455-17, in Queens County Criminal Court. (Compl. 15; *see also id.* at 1 ("[Plaintiff] is requesting this unlawful action be expedited to Federal Court to redeem . . . stolen property

---

likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in [plaintiff's] favor, and that an injunction is in the public interest." *See Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)). A plaintiff may also obtain a temporary restraining order by showing, in the alternative, "irreparable harm and either a likelihood of success on the merits or 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward [Plaintiffs].'" *Clapper*, 785 F.3d at 825 (quoting *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012)). Plaintiff has not provided the Court with sufficient information to support his applications for a temporary restraining order. The Court therefore denies Plaintiff's applications without prejudice to renew.

[3] In addition to the Complaint, Plaintiff has also filed several additional documents. (*See, e.g.*, Aff. of Fact, Docket Entry No. 5; Writ of Execution, Docket Entry No. 6; Aff. of Fact, Docket Entry No. 7; Copies of Correspondence from other Agencies with Handwritten Messages Superscribed by Plaintiff, Docket Entry No. 8; Report and Notice of Infraction, Docket Entry No. 9; Notice, Docket Entry No. 10; Notice of Executor Degree – "Res Judicata," Docket Entry No. 11; Notice, Docket Entry No. 12; Mot. for Decl. J., Docket Entry No. 13.) These documents contain various information regarding, among other things, the facts underlying Plaintiff's March of 2017 arrest, correspondence with the Social Security Administration, and complaints about a settlement reached "without [Plaintiff's] consent" in a section 1983 class action brought by a pretrial detainee in *Parker v. City of New York*, No. 15-CV-6733, 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017). The Court draws additional relevant facts from these filings to ascertain the nature of Plaintiff's claims and assumes their truth for purposes of this Memorandum and Order.

classified as 'ARREST EVIDENCE.'").)[4]

By letter dated August 7, 2017, the NYPD informed Plaintiff that they were holding his vehicle at the Springfield Gardens Auto Pound in Queens, New York, as evidence seized pursuant to arrest number Q17633443. (*Id.* at 42.) The letter explained that in order to obtain release of the car from the auto pound, Plaintiff must "obtain a District Attorney's Release from the District Attorney Property Release Unit in the borough in which the case is held." (*Id.*) Plaintiff also needed to determine if an additional release was needed from the "Civil Enforcement Unit" by making a "[f]ormal [d]emand within one hundred twenty [(120)] days from case termination" at the "Springfield Gardens Auto Pound . . . or the 'Civil Enforcement Unit.'" (*Id.*)

Plaintiff appears to have obtained a letter from the Queens County District Attorney's office permitting the release of his property. The District Attorney Release dated August 24, 2017, states that Plaintiff's vehicle "will not be required by the District Attorney of Queens County in the prosecution of the above entitled case. The property in this case is in the possession of the Property Clerk of the Police Department." (*Id.* at 15.) The current status of Plaintiff's criminal case and vehicle is unclear.

Plaintiff seeks millions of dollars in damages as set forth in a "Schedule of Rent . . . and

---

[4] According to a "Complaint Room Screening Sheet" included in Plaintiff's submissions, Plaintiff was pulled over in a separate incident on March 25, 2017 for driving a vehicle with license plates "reading in sum and substance: private/not for hire/dept of transportation," and which had "excessively tinted driver-side windows." (Copies of Correspondence from other Agencies with Handwritten Messages Superscribed by Plaintiff 11, Docket Entry No. 8.) It appears that the NYPD seized this vehicle in connection with Plaintiff's July of 2017 arrest. (*Id.*) The Complaint Room Screening Sheet further states that "upon further investigation, a/o [arresting officer] discovered that deft was driving with a suspended license . . . and observed that the registration for the above vehicle had lapsed." (*Id.*) After the arresting officer informed Plaintiff that he was under arrest, Plaintiff refused to exit the vehicle, and the arresting officer "removed [Plaintiff] from [the] car." (*Id.*)

associated fees" included in the Complaint. (*See id.* at 5.)

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

### b. Section 1983 claims

The Court liberally construes Plaintiff's submissions as asserting claims pursuant to 42 U.S.C. § 1983 against the City of New York, the County of Queens, and the officer involved in

arresting him and seizing his vehicle.[5] The Court further construes Plaintiff's submissions as asserting section 1983 claims for false arrest, for impounding his vehicle, as well as violations of his constitutional right to travel, and his procedural due process rights. (*See* Compl. 2 ("Criminalization of my right to travel or execute acts that leads to enjoying the use to the public Highways and by-way's is Conspiracy to deprive the Moor/National of 'due process'"); *see also id.* (arguing that driving with tinted windows "is not probable cause").)

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *See Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks omitted); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

### i. Plaintiff's section 1983 claim against the City of New York

In order to assert a section 1983 claim against the City of New York, a Plaintiff must demonstrate that "(1) an official [municipal] policy or custom that (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d

---

[5] Plaintiff names the State of New York and the District of Columbia as Defendants in this action. However, these are not proper parties, as they are immune from suit pursuant to the Eleventh Amendment. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). In addition, while Plaintiff also names the NYPD and Queens County as Defendants, the NYPD is a non-suable agency of the City of New York, *see Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007), and Queens County is a subdivision of the City of New York, *see Jones v. Queens Cty.*, No. CV-90-3329, 1991 WL 37083, at *1 (E.D.N.Y. Mar. 19, 1991) ("City agencies such as the police department and subdivisions such as Queens County are not subject to lawsuits in their own names but only in the name of the City of New York.").

129, 140 (2d Cir. 2010) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Douglas v. City of New York*, 730 F. App'x 12, 17 (2d Cir. 2018) (same). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick*, 757 F.3d at 62 (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions). In addition, a plaintiff bringing a section 1983 claim against individuals must show that each of the named individuals is personally liable for the alleged harm. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). "Because vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff fails to allege any facts as to any unconstitutional policy or custom attributable to the City of New York. While Plaintiff alleges that his arrest "was motivated by a[n] ulterior [m]otive (meeting quota)," (Compl. 3), he provides no allegations to suggest that the arrest was made pursuant to an unlawful municipal policy. *See Joseph v. Doe*, No. 16-CV-2004, 2017 WL 4233024, at *4 (E.D.N.Y. Sept. 22, 2017) (dismissing *Monell* claim based on allegation of

"unwritten quota policy"); *Weaver v. City of New York*, No. 09-CV-10262, 2011 WL 4974570, at *8 (S.D.N.Y. Oct. 18, 2011) ("To the extent that the [c]omplaint attempts to allege an official policy or custom, [the plaintiff] sets forth a conclusory allegation that [the police officer defendant] was seeking to satisfy a monthly arrest quota. This is insufficient to state a *Monell* claim." (internal citations omitted)). The Court therefore dismisses Plaintiff's claim against the City of New York.

## ii. Plaintiff's section 1983 claims against NYPD officers

### 1. False arrest claim

In addressing a section 1983 claim for false arrest, courts look to "the law of the state in which the arrest occurred" to determine if the officers had probable cause to arrest the plaintiff for a violation of state law. *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19–21 (2d Cir. 2012) (analyzing whether the plaintiff's actions gave a police officer probable cause to arrest the plaintiff for violating state law). "Under New York law, 'to prevail on a claim of false arrest a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Nzegwu v. Friedman*, 605 F. App'x 27, 29 (2d Cir. 2015) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003)). "A [section] 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013).

The Fourth Amendment protects individuals from unreasonable searches and seizures by law enforcement officials. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). A law enforcement official violates the Fourth Amendment's protections if he or she arrests someone without probable cause. *Id.* Conversely, "probable cause is an absolute defense to a false arrest

7

claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco*, 615 F.3d at 139). "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime . . . .'" *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *see also Gonzalez*, 728 F.3d at 155. The reviewing court "must consider [only] those facts available to the officer at the time of the arrest and immediately before it." *Stansbury*, 721 F.3d at 89 (alteration in original) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). Probable cause need not be "predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer." *Jaegly*, 439 F.3d at 153 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). A "plaintiff is not entitled to damages under [section] 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest." *Jaegly*, 439 F.3d at 154. The question is whether the facts known to the arresting officer, at the time of the arrest, objectively support a finding of probable cause to support the arrest. *Gonzalez*, 728 F.3d at 155.

The Court cannot evaluate whether Plaintiff can assert a false arrest claim because he fails to include the details regarding his July of 2017 arrest in the Complaint. The Court therefore dismisses this claim to the extent it rests on Plaintiff's July of 2017 arrest.

Plaintiff also fails to assert a plausible false arrest claim based on the March of 2017 arrest. According to the information contained in the Complaint Room Screening Sheet, the officers arrested Plaintiff for driving with a suspended driver's license. *See People v. Chatelain*, 886 N.Y.S.2d 679, 680 (App. Div. 2009) ("Having observed defendant drive a vehicle with a

suspended license, the officer had probable cause to arrest him, and we conclude that issuance of a summons would not have been a practicable alternative to arrest." (internal citation omitted) (first citing *People v. Troiano*, 35 N.Y.2d 476, 478 (App. Div. 1974); and then citing *People v. Peterson*, 666 N.Y.S.2d 785 (1997))). Plaintiff does not allege any facts that suggest the officers did not have probable cause to arrest him on March 25, 2018. The Court therefore dismisses Plaintiff's false arrest claim.

### 2. Vehicle impoundment claim

The impoundment of a vehicle may implicate rights guaranteed by the Fourth Amendment's protection against unreasonable searches and seizures. *See Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) ("The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment."); *see also United States v. Coccia*, 446 F.3d 233, 237–38 (1st Cir. 2006) (considering a challenge to the towing of a vehicle as an unreasonable seizure in violation of the Fourth Amendment). However, "[i]n the interests of public safety and as part of what the [Supreme] Court has called 'community caretaking functions,' automobiles are frequently taken into police custody." *S. Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). "When a person is taken into custody after being stopped in his vehicle, it is reasonable for police officers to impound the vehicle under the community care functions where, among other things, the vehicle would otherwise potentially impede traffic, threaten public safety, or be subject to vandalism." *United States v. Colon*, No. 10-CR-498, 2011 WL 569874, at *14 (S.D.N.Y. Feb. 8, 2011) (first citing *United States v. Bailey*, 468 F. Supp. 2d 373, 392 (E.D.N.Y. 2006); and then citing *Opperman*, 428 U.S. at 373)).

To the extent Plaintiff seeks to plead a claim based on the impoundment of his vehicle, he has not provided sufficient allegations to support this claim. Based on the Complaint Room

Screening Sheet, it appears that NYPD officers arrested Plaintiff after they stopped him while he was driving. Plaintiff does not allege that the impoundment was improper because, for example, the vehicle was not impeding traffic, threatening public safety, or not potentially subject to vandalism. *See Colon*, 2011 WL 569874, at *14 (finding the decision to impound a vehicle reasonable because, among other things, "it could have been susceptible to vandalism or theft"); *Bailey*, 468 F. Supp. 2d at 392 ("It is well-established that, when a person is taken into custody after being stopped in his vehicle, it is reasonable for police officers to impound the vehicle under the community car[e] functions where, among other things, the vehicle would otherwise potentially impede traffic, threaten public safety, or be subject to vandalism."). In addition, Plaintiff does not allege that the impoundment was improper because a passenger was present to take control of the vehicle. *See Barnes v. City of New York*, No. 13-CV-7283, 2015 WL 4076007, at *8 (S.D.N.Y. July 2, 2015) ("Courts have found warrantless impoundment of vehicles to be reasonable, for example, when the driver has been arrested and no one else is able to take control of the vehicle." (citing cases)), *report and recommendation adopted*, No. 13-CV-7283, 2015 WL 5052508 (S.D.N.Y. Aug. 26, 2015).

The Court dismisses this claim because Plaintiff fails to allege any facts that suggest that the impoundment of his vehicle was improper and violated his Fourth Amendment rights.

### 3. Right to travel claim

"The Constitution protects a fundamental right to travel within the United States," which, as interpreted by the Second Circuit, includes the "right to intrastate as well as interstate travel."[6]

---

[6] "Although the Supreme Court has suggested that '[t]he textual source of the constitutional right to travel, or, more precisely, the right of free interstate migration, . . . has proved elusive,' it has protected that right by invoking both the Privileges and Immunities Clause of the Fourteenth Amendment and the Equal Protection Clause." *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 99 (2d Cir. 2009) (quoting *Att'y Gen. of N.Y. v. Soto–Lopez,* 476 U.S. 898, 902 (1986))).

10

*Selevan v. New York Thruway Auth.*, 584 F.3d 82, 99–100 (2d Cir. 2009) (first citing *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008); and then citing *King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 648 (2d Cir. 1971); and then citing *Ramos v. Town of Vernon*, 353 F.3d 171, 176 (2d Cir. 2003)); *see also New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 883 F.3d 45, 66–67 (2d Cir. 2018) ("This Court has 'acknowledged a correlative constitutional right to travel within a state.'" (alterations omitted) (citing *New Rochelle Mun. Hous. Auth.*, 442 F.2d at 648)). "However, that local regulations 'merely have an effect on travel is not sufficient to raise an issue of constitutional dimension," because the right to travel "is implicated only when the statute 'actually deters such travel, or when impedance of travel is its primary objective, or when it uses any classification which serves to *penalize* the exercise of that right.'" *Id.* at 66–67 (alterations omitted) (quoting *Soto-Lopez v. N.Y.C. Civil Serv. Comm'n*, 755 F.2d 266, 278–79 (2d Cir. 1985)). Moreover, "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on travel simply do not amount to the denial of a fundamental right." *Weisshaus v. Port Auth. of New York & New Jersey*, 497 F. App'x 102, 104 (2d Cir. 2012) (first quoting *Torraco*, 615 F.3d at 140–41; and then citing *Soto-Lopez*, 755 F.2d at 278).

Plaintiff has not alleged any facts to suggest a violation of his right to travel. The seizure of Plaintiff's vehicle alone is insufficient to state a claim for violation of his constitutional right to travel. Plaintiff retained his ability and constitutional right to travel even if inconvenienced by the seizure of his motor vehicle. *See Weisshaus*, 497 F. App'x at 104; *see also Annan v. State of New York Dep't of Motor Vehicles*, No. 15-CV-1058, 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016) ("What is at issue here is simply [the plaintiff's] ability to travel by motor vehicle on New York's roads — a privilege not protected by the Constitution." (collecting cases)), *aff'd sub*

*nom. Annan v. New York State Dep't of Motor Vehicles*, 662 F. App'x 85 (2d Cir. 2016). The Court therefore dismisses Plaintiff's right to travel claim.

### 4. Due process claim

The Constitution imposes "constraints," ordinarily in the form of notice and a pre-deprivation hearing, on "governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause" of the Fifth and Fourteenth Amendments. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015) (citing *Mathews*, 424 U.S. at 332). Because the requirements of procedural due process "apply only to the deprivation of interests encompassed by the [Constitution's] protection of liberty and property" and because "the range of interests protected by procedural due process is not infinite," *see Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972), the "first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty,'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). If the court finds that the plaintiff has been deprived of such an interest, it evaluates whether the government's procedures comport with due process. *See id.*

In order to state a procedural due process claim for the seizure of his vehicle, Plaintiff must allege that:

> (1) the City arrested him and seized his property; (2) it did not give him a property voucher with the constitutionally-required notice printed on it; (3) it did not otherwise notify him of the procedures he could follow to reclaim his property; and (4) he was deprived of the property as a result.

*Sommerville v. Wright*, No. 12-CV-165, 2014 WL 794275, at *6 (E.D.N.Y. Feb. 25, 2014) (quoting *Frith v. City of New York*, No. 07-CV-5899, 2011 WL 3477083, at * 3 (S.D.N.Y. July 7, 2011)); *see also Chunn v. Amtrak*, No. 14-CV-6140, 2015 WL 10520663, at *7 (S.D.N.Y. Aug. 6, 2015) (citing *Contant v. City of New York*, No. 09-CV-2851, 2012 WL 1158756 at *6–*7

(E.D.N.Y. Mar. 16, 2012)), *report and recommendation adopted*, No. 14-CV-6140, 2016 WL 1071029 (S.D.N.Y. Mar. 17, 2016).

Plaintiff fails to allege inadequate notice regarding the procedures to reclaim his vehicle. The Court therefore dismisses Plaintiff's procedural due process claim.

### c. Leave to amend

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file an amended complaint within thirty (30) days of this Memorandum and Order to the extent that Plaintiff may seek to pursue a section 1983 claim for violation of his constitutional rights. Plaintiff must provide the date and location for all relevant events and a brief description of what each defendant did or failed to do in violation of Plaintiff's civil rights. Plaintiff is advised that the amended complaint will completely replace the original complaint, must be captioned, "Amended Complaint," and must bear the same docket number as this Memorandum and Order.

### III. Conclusion

Accordingly, the Court dismisses the Complaint for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court grants Plaintiff thirty (30) days from the date of this Memorandum and Order to file an amended complaint. To aid Plaintiff with this task, the Court respectfully requests the Clerk of Court to provide Plaintiff with a "Complaint for Violation of Civil Rights" form and an *in forma pauperis* form. If Plaintiff fails to timely file an amended complaint, the Court will enter judgment dismissing this action for the reasons set forth above.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: November 1, 2018
       Brooklyn, New York